The next case on the calendar is United States v. Murtha. Good afternoon. May it please the court, my name is Maura Buckley and I represent the appellant Thomas Murtha. The district court in this case committed procedural error by including in the loss calculation $660,000 that was connected to HG, an individual the district court found to be a victim. The result of including that $660,000 was to elevate Mr. Murtha's guideline range from 51 to 63 months to 63 to 78 months. The error that the court made specifically was, first off, in not holding the government to its burden of demonstrating the loss by a preponderance of the evidence, and then in committing plain error in its factual findings. Really narrowing down, the issue here that was argued below and raised on appeal is that the government didn't present evidence that focused on or centered on Mr. Murtha's intent at the time the agreement was formed. The government introduced evidence, and the court relied on that evidence, that were events or documents that occurred, generated or occurred after the agreement. And that evidence was, first off, the most obvious, I think, sort of hallmark, you know, of a breach, is that no money was returned. And I'll – Well, there was other – there was a – I realize this is after the commencement of the arrangement, but there is the response to the questionnaire from HG's lawyers that he had placed over $800,000 of his own money at risk in the venture, and that just wasn't true. That's correct. It wasn't just that money was lost. There were false representations made during the course of their dealings with each other. Correct, Your Honor. I actually had four things that I was going to cite. That was one of them. Thank you. And if I may just cite the other two and then go back and discuss each one. Another consideration was Mr. Murtha's statement when – it was the spring of 2017 when he was arrested for this offense at the airport in Michigan. He made a statement essentially admitting to the facts of what occurred with the agreement, but – and I'll go back into that in a second. The fourth – I think I'm on number four – factor that the government raised and the court focused on was sort of – I'm putting this label on it because I think it's somewhat accurate – is an M.O. You know, Mr. Murtha admits to defrauding all of these other people and – Hadn't he – hadn't he defrauded others previous to getting this money, this agreement? It was a period of time, yes, Your Honor. It was a course of conduct. And so the court – A course of conduct that had been going on already previously for some time. Yes, Your Honor. And what the court and the government focused on was putting off Mr. Murtha, you know, post-agreement with H.G., was putting off the lawyers and cited back to some of the things he had done in – with the conduct that he admitted, you know, was part of the fraud. Going to the first – the obvious, you know, sort of breach is that no money was returned to H.G., you know, we cite the Countrywide case heavily because the Countrywide case points out, you know, just the common law requirement of that intent to defraud at the time of the agreement. A later breach, even if it's intentional – Yes, but that's the weakest of the points. Why don't you deal with it? Okay. Thank you, Your Honor. Another point, the March 16th – March 2016 questionnaire, that also under Countrywide, if an intent to, you know, distort or put some false answers on that questionnaire cropped up in March 2016, it's a subsequent intent. It's not an intent necessarily that he had at the time the agreement was formed with H.G. Additionally, and I don't think his statement in 2017 really sheds much light on anything for the government other than he admits to the facts. I'm not sure your whole proposition has any merit, because even if he hadn't formed the intention to steal the 660 at the time that the 660 was placed in his care, even if that were true, what does that matter if he later formed an intention to steal the 660 that had been placed in his hands? Your Honor, the intent to defraud has to be present at the time and connected to, you know, either a material omission or a material – Fraud has to be how he comes into possession of the money? At the time he induces the other person to pay it over? Yes, Your Honor. If he later defrauds the person with respect to money that has been placed in his possession without intent to steal, that later intent to defraud is perfectly valid. Why is the later formed intent to defraud not valid, even if it occurs after the money is coming to his possession? He still has – he had obligations with respect to that money, and he decides that instead of performing those obligations, he's going to defraud the rightful owner of that money. Your Honor, at the time he got the money, if the – may I just say, if the intent was pure at the time he got the money and then things didn't go as planned And he decided to defraud the owner of the money and keep the money? Your Honor, it's the intent at the time the agreement was made and the money was paid over that we believe is the focus here. If I take your money in perfect good faith and you entrust it to me for some purpose and I take it in perfect good faith, but after getting it, I decide I'm going to defraud you and make – and keep the money, convert it to my own uses and tell you false things in order to keep the money. That's fraud with respect to $660,000, even if I got possession of it without intent to defraud. Your Honor, and certainly, you know, I'm relying very heavily on the Countrywide case, and I believe the Countrywide case takes a different view of it, that at the time that agreement is formed, at the time the money is paid over, because we're If the intent, if the inducement, I use the word pure, it's probably not the best word to use in a criminal case, but if the inducement, the facts given or omissions are inducements that are made with a pure intent, there can't be – But a week later you decide, you know, I really could use this money. And so you send a monthly report to the – to H.G. and you say, I'm investing your money, all's going according to plan. But in fact, at the time you make that statement, you intend to defraud. I mean, you may not have committed a fraud on the first day, but you've now committed a fraud on the next week. Well, you know, here, Your Honor, I don't think it was that quickly. I know it's an example that Your Honor's— Or a month or a year later. There's no— I mean, if you make a representation to a party that if they were told the truth would say, give me back my money, you've defrauded them, haven't you? I think it depends on other facts, including how much of the agreement was followed through on them. But even with that, even on your theory that it had to be at the time, when you look at your client's statement, that what he did with the money was he acquired property other than that mortgage, and then he mortgaged that property and used the money for personal benefit. And he never shared any of the profits. Okay. You look at that in light of his MO in all of these other frauds that he committed, which is this is exactly what he did. He used to tell people, promise them all kinds of returns, and in that circumstance, why couldn't the district court make a finding that this scheme, too, was a fraud scheme from the get-go? I mean, it only has to be found by a preponderance, more likely than not. And you have to persuade us that it was clear error to find it. Correct, Your Honor. The difference between what we're talking about with HG and the other frauds, one big difference was, frankly, the facts reported as to when the agreement was formed. If you take the HG example versus one of the other examples where Mr. Murtha is handling funds in a closing and just isn't paying them over, it's a pretty clear cut that his duty there was to hand the funds over, and he didn't. With Geller or, I'm sorry, with HG, it's unclear what they even discussed, how they discussed things would come to pass, because HG gives some facts to the FBI agents, but it's the 302s generated by the agent, they're pretty replete with references to HG not being my words. I'm just some clear historian. It's clear that there was never any legitimate investment. I mean, right from the get-go, he acquired property, mortgaged it, and he used the money. So that belies the notion that at the start it was a legitimate scheme, and as I said, then you put it together with the fact that this is how he has repeatedly operated. So don't argue to me now about how it would be possible to find something favorable to the client. Why is it clear error for the district court to say, I think it's more likely than not that from the get-go this was a fraud scheme, too? I go back to the fact that I don't think the evidence that the government put forth reflected on an intent to defraud at the time that agreement was signed, and I don't think it was made in those wires. Sotomayor, similar acts can be indicative of intent. So, again, I mean, you almost have a sufficiency argument you have to make here, that there was no way the judge could have found this, and I'm not seeing that. Your Honor, again, with the other acts of fraud, it was clear cut. You had a duty. Most of them, I'm referring mostly to the ones where he was a lawyer, acting as a lawyer. He had a duty to pay over funds. Again, whether it was a personal injury matter, whether it was a real estate case. Here you had a nebulous agreement to begin with. This one is different. This is a, it involves a, what at the beginning seemed to be a business relationship. The others didn't. You may be right that the parameters of the relationship are not as clearly spelled out as if they'd had a written contract. But this is a preponderance of the evidence standard. And I don't think you're arguing, correct me if I'm wrong, that all the evidence that the district court relied on and that we're alluding to this morning can't be considered. You can look at the misrepresentations made after the relationship began. You can look at the course of dealing with the others, that he's committing fraud against others at a similar time and make inferences from that about maybe he's looking for money. You can look at the speed with which he did not comply with the arrangement to buy particular properties, but went off in a different direction. All that can support that from the beginning, going back to your principal case, there was a fraudulent scheme, at least up to a preponderance. I agree with that, Your Honor. I think that the difference is I don't think it adds to a preponderance, particularly here where that beginning, the beginning, the agreement at the beginning, is unclear. The witness appears to be unreliable from the government's own agents. And that's for the district court to decide. Let me ask you this. The whole point here is a sentencing challenge and the district court considering this loss together with all the other loss. Even if it wasn't fraud, isn't it a loss caused by unlawful conversion? Your Honor, I mean, otherwise, you're saying to us what a district court judge should have done is consider certain frauds, but not consider this at all in trying to decide what to sentence him for for the crime of conviction and how seriously to view his misconduct and how much the court thought he needed deterrence and all this else. Whether it's called fraud or unlawful conversion, why isn't this properly considered by the district court in sentencing? Well, first, I mean, there was no alternative argument, as Your Honor. Yes, but we can review for on any basis supported by the record. There's no doubt this is criminal conduct. If you want to talk about what label to put on it, but his criminal conduct resulted in a $660,000 loss. The reason why it's so critical here is because of the fact that it's considered relevant conduct for the guidelines. I don't know under some other theory whether it would have actually met, you know, the requirements to be included in the guideline calculation. So that's the starting point, is that it impacted the guidelines. It's unlawful taking of money, whether you do it by fraud, by conversion, by holding a gun on somebody. It's this man repeatedly engages in conduct that unlawfully takes people's money. Your Honor, I don't think it amounts to relevant conduct if it's by the theory that we have posed, which is that it started out as a legitimate agreement that went wrong down the line. And certainly he may have done things, you know, that were dishonest at a later point. I don't think that rises to the level of sort of going back and making it some kind of a fraud. I'm very much out of time. I, if appropriate, I may address the harm issue on rebuttal. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Jennifer Lariah, and I represent the United States in this case. Your Honors, the district court did not clearly err in finding that this individual H.G. was a victim or that the loss amount exceeded $1.5 million. Judge Shea drew a permissible and reasonable inference that Mr. Murtha had fraudulent intent when he induced H.G. to invest $660,000. Judge Shea properly relied on multiple sources to make that finding, including H.G.'s statements to law enforcement, a document that Mr. Murtha provided to H.G.'s counsel to memorialize their earlier agreement. Mr. Murtha's statements to the FBI, and also the fact that Mr. Murtha's conduct with respect to H.G. was consistent with conduct that Mr. Murtha engaged in with respect to other victims. There is also no dispute that Mr. Murtha did not give back a dime to H.G. of this investment. In light of the careful record that Judge Shea made, which was adequately supported by the evidence before him, there was no procedural error at Mr. Murtha's sentencing. Your Honors, if the Court has any questions, I'm happy to entertain them. Otherwise, the government will rest on its brief. The government submits that the 78-month sentence imposed by Judge Shea was reasonable and should be affirmed. The government didn't address the harm issue. I do believe briefly I should address it. The district court, I think the best way to describe it is sort of preemptively addressed the harm issue at sentencing when Judge Shea stated that he would have given Mr. Murtha a 78-month sentence whether he'd found the $660,000 should have been in the loss amount. And there are many sort of arguments, I think, that can be made about this. But the most basic would be if you had an attorney in the same exact shoes as Mr. Murtha, who very clearly was responsible for the lesser amount that would subject him to a 51- to 63-month guideline range, you know, what are we saying about sort of the fairness in sentencing if we give that person the same sentence, the 78-month sentence that Mr. Murtha has received? So I think just in terms of in principle and in fairness, I think it's a concerning thing when a district court says, I would have done the same thing anyhow. And I know he offers explanations. And certainly, at first blush, I think they make sense. But essentially, the district court goes through the 3553A objectives, particularly to reflect the seriousness of the offense. When a lawyer does what Mr. Murtha did, we want to send a very strong message. And I think we can all appreciate that. But he gave him the top of the guidelines after a vigorous, vigorous argument and gave him that 78 months. I find it very hard to believe that that $660,000 and all of the evidence and all the information that we went through to get there did not impact that sentence. And I'm not just talking about the guidelines. The other point I want to make within the guidelines is that loss, as we know in the guidelines, is a reflection of culpability. And here, it's hard to imagine if that loss had been reduced, that culpability reduced by $660,000 that Mr. Murtha still would have received 78 months. A couple of quick points. SOTOMAYOR Isn't it also reflective of the need for deterrence? Because this goes back to our earlier discussion. Whether it's fraud, whether it's conversion, whatever else, it's another scheme that your client came up with to get money. And suggests that there is a particular need to deter someone who has so persistently engaged in these kinds of schemes. It perhaps, the problem is the district court doesn't necessarily say, you know, the district court found that $660,000 included, found it to be fraud. SOTOMAYOR And said that it would have imposed it even if it didn't come within, even if it wasn't properly considered within the loss category. Which you're saying it's not appropriately considered because he didn't have the fraudulent intent when he first induced HG to give him the money. But the district court is saying I wouldn't ignore the fact that he ultimately stole this money. And so I'm not sure that I agree that we have no idea or there's no plausible reason why the district judge would not have considered this conduct, even if it hadn't formally raised the guideline level. MS. MCGOWAN If I may, just very quickly, Your Honor, I don't think the judge's focus was on what label to put on that $660,000 when he was saying I would have given him 78 months. His focus was on this is very serious. I don't think he should do after a good time less than 5 years. I think it was more about that. So I think even if he had found the 660 was a purely innocent act on Mr. Murtha's part, the impression I get when I read that record is he would have given him. Sotomayor That's beyond reason, right? I mean, you're not arguing it's completely innocent. MS. MCGOWAN No. I'm trying to – I'm just trying to make the point that whether that 660 existed or not, it appeared from the – it appears from the record that the judge wanted a particular sentence, 78 months. The problem is the judge doesn't distinguish if when he does that preemptive, you know, makes that preemptive statement, the judge doesn't distinguish, well, if he had – if Mr. Murtha had been in the guideline range that we had advocated, what would the variance specifically have been? What would the upward departure specifically have been? Because all of the things that the district court articulates as distinguishing are included as enhancements if you look at the plea agreement and the guidelines. Abuse of trust, vulnerable victim, you know, extreme financial hardship, I think there's six points in total. So I think it's very difficult. I don't think the judge – certainly don't believe he was insincere in what he stated, but I think it's not clear. JUSTICE SCALIA Why isn't the district judge saying, even if you're right that the intent to defraud was not – was not conceived at the time that the money was placed in his hands, I still think the appropriate sentence is 78 months? MS. GOTTLIEB Well, essentially, that's what the judge said. JUSTICE SCALIA Yeah. MS. GOTTLIEB That the appropriate sentence was 78 months regardless of the 660. And my point is – JUSTICE SCALIA I'm not saying that the $660,000, I'm going to sentence the same way, regardless of whether there was any culpability with respect to the $660,000. Even if you can establish that because of some precedent, ridiculously established by the court of appeals in some case, that shouldn't have been counted as to go into the next category, I still think on these facts, 78 months is the appropriate sentence. It's a variance from the guidelines. MS. GOTTLIEB I want to make sure that I'm clear on this, because I think maybe this was the question Your Honor had asked earlier. Your Honor's asking if he believed that – if the judge – if Judge Shea believed that the 660 was still problematic but not technically shouldn't be included in the loss, is that what Your Honor's? JUSTICE SCALIA Yeah, because of – because of a precedent. MS. GOTTLIEB Understood. The problem is that's not articulated, at least not from what I see in the record. It seems to me that it's fairly black and white.  JUSTICE SOTOMAYOR He's not bound by the guidelines. MS. GOTTLIEB No, he's not.  I know that. JUSTICE SOTOMAYOR And when you say it's not articulated, you yourself have acknowledged this is not conduct that's not violative of the law. There may be some argument you can make as to what law it's violative of. But, I mean, it's not like we don't know why the judge would have thought a 78-month sentence was necessary or that your client would know why. MS. GOTTLIEB What I'm saying is not articulated. It's Judge Shea saying there would be some alternative consideration of the 660, even if it wasn't technically included in the loss. When Judge Shea justifies, I would have given him 78 months if I hadn't included the 660 in the loss, he doesn't say because, you know what, what you did later, even though countrywide or something might absolve you, what you did later with regard to that money was, you know, conversion or horrible, whatever he might want to say about that. The Court didn't say that. The Court said I would have given him 78 months regardless because of and went through the 3553. JUSTICE SOTOMAYOR Regardless of what? What did he say? MS. GOTTLIEB Regardless of whether the 660 is included in loss and focused on the fact that, you know, Mr. Murtha was a lawyer, the abuse of trust issue, you know, just his general conduct. And that's the record. JUSTICE SOTOMAYOR What's wrong with that? I mean, the, you know, the — MS. GOTTLIEB We've recognized that. We've recognized that a judge is not bound by the guidelines, that there's actually a fairly broad range of reasonable sentences that he can consider. And if your argument to us is that that was not permissible, that that was unreasonable, I don't think you've got precedent to support that. MS. GOTTLIEB I'm not arguing that he couldn't give a 78-month sentence. I'm arguing that when he made that distinction or tried to make a distinction and said, I would give you 78 months even if the guideline range was 51 to 63 months, Judge Shea had to give specific reasons why an upward variance would have been justified. JUSTICE SOTOMAYOR Only enough for us to understand that his decision-making was — was not arbitrary or capricious. Isn't that our precedent? MS. GOTTLIEB I — JUSTICE SOTOMAYOR We don't — we don't require incredible detail where the record makes it apparent why the judge is doing what he's doing. MS. GOTTLIEB I think it runs into trouble with arbitrariness or at least just fairness when you go to the example of — Sotomayor You're saying the 78-month sentence is arbitrary in the totality of facts of this case. Is that your argument to us? MS. GOTTLIEB I think your — I think it's a very high sentence, and I think it was an unreasonable sentence in the end as we argue the substantive error. But I — Your Honor, going back to the lawyer who committed fraud with a range of 51 to 63 months who has all of the same characteristics of Mr. Murtha, that lawyer would receive 78 months under the court's analysis, as did Mr. Murtha. And there's got to be some leveling off there. That — that would be an unfair result. JUSTICE SCALIA You're old enough to have been involved in criminal law before 1987 when the Guidelines went into effect. What you're saying — MS. GOTTLIEB More of us than you'd like to — than we'd like to admit. JUSTICE SCALIA Back in those days, judges fashioned sentence based on what they thought was just. When the Guidelines came in, everything was numerical. Six to .8 ounces to 7.3 ounces is this, $220,000 to $240,000 is that. And you young people think that everything has to be linked to amounts and differ. But it would be perfectly logical for a judge to have two defendants before him who were co-defendants in exactly the same conduct, and one of them was responsible for $700,000. The other one was responsible for $1,500,000. And the judge would say, you two, your sentences are 78 months because that's the appropriate sentence for what you've done. There's nothing illogical about that if your mind hasn't been warped by the Guidelines into thinking that everything is numerically ratcheted in criminal sentencing. MS. GOTTLIEB Your Honor — Your Honor, I thank you for lumping me in with young people. I do appreciate that. I was actually practicing law for several years before the Guidelines became advisory. So they are all I know. I will say that. Your Honor, I think here the problem is there has to be clearly articulated reasons for why the Guidelines were not used. I don't think we have that here. I thank you for letting me go well over my time. MS. GOTTLIEB And thank you both. Nicely done. Last case on the calendar. So I'll ask the clerk to adjourn court. Court is adjourned.